**In re CHARLESTON MEDICAL CENTER, LTD., Debtor.**

**HILLSMITH CONSTRUCTION CO., Claimant,**

v.

**CHARLESTON MEDICAL CENTER, LTD., and the Limited Partners Thereof, Objectors.**

**Bankruptcy No. 1–86–01545.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 31, 1989.

Robert A. Goering, Cincinnati, Ohio, for objectors.

James W. Lippert, Cincinnati, Ohio, for claimant.

Norman L. Slutsky, Cincinnati, Ohio, for debtor.

Charles Caldwell, Asst. U.S. Trustee, Cincinnati, Ohio.

## DECISION and ORDER ON OBJECTION TO CLAIM OF HILLSMITH

BURTON PERLMAN, Chief Judge.

Claimant filed a proof of claim in this Chapter 11 case in the amount of $152,-871.95 as of January 31, 1988, plus future interest, attorney fees, court costs, and expenses. The proof of claim recites that the consideration for the debt is "Note and Mortgage, services rendered, including the furnishing of labor and materials. Forebearance in filing Mechanic's Lien." The debtor and the limited partners thereof filed an objection to the claim. A pretrial conference was held and an order entered thereafter. In such order (Doc. A–7), we ruled that this matter would be dealt with by applying B.R. 7008 which calls for the provision of pleadings since the issues presented here required such treatment for their proper development. Thereafter, further pretrial conference was held, followed by a second pretrial order (Doc. A–13). Therein, we identified three issues, viz., (1) whether the mortgage is a valid one which claimant can enforce since claimant was not licensed to do business in South Carolina where the project was constructed; (2) is the mortgage invalid because of incompetency of the mortgagor to give a mortgage; and (3) whether claimant should be estopped from asserting a mortgage interest because it knew that the taking of the mortgage was not in accordance with the limited partnership agreement. The parties have also raised an issue as to the proper method for computation of interest, if allowable. The objection to claim came on for hearing. At the hearing, debtor stated that it was abandoning the estoppel position identified above.

We find the relevant facts to be as follows. Claimant was retained by debtor, Charleston Medical Center, Ltd., to construct a medical facility in Goose Creek, South Carolina. Claimant, at all pertinent times, was an Ohio corporation with offices located in the Cincinnati area. Claimant is a construction firm engaged in the construction of industrial and commercial buildings. In connection with these efforts, it serves as a general contractor. Claimant entered into a contract to build the facility in question for the debtor on March 2, 1983. Claimant's president, John W. Peck, and another person in the firm went to South Carolina where they took an examination as a result of which a building permit was issued for the job. Claimant then proceeded to construct the building, and work thereon was finished November 23, 1983. Claimant submitted monthly invoices and statements as work progressed. Some payments were made, but along the way difficulties in getting paid arose. Claimant could have, for this reason, pulled off the job, but refrained from doing so because that was "not our nature", according to the president of claimant, John W. Peck. Because it was not getting paid, claimant, after the job was completed, contemplated filing a mechanic's lien under the laws of South Carolina, and so informed Kenneth L. Theising, a vice president of Delta Corporation, the general partner of debtor, with whom Mr. Peck for the most part dealt. Claimant was induced not to file a mechanic's lien by the granting of a note and mortgage to it on the project for the debt it was owed. The note and mortgage were dated February 15, 1984, a date well within the 90–day period for the filing of a mechanic's lien in South Carolina. The mortgage, however, was not recorded until March 19, 1984 in South Carolina.

While no express mention at the hearing was made, it appears that it is the contention of claimant that it is entitled to more than the amount stated in the proof of claim, specifically $169,282.18, a figure which appears in JX 3. This figure is derived by monthly compounding the unpaid balance due to claimant, beginning with February 15, 1984. It is the position of claimant that compounding is the proper technique for arriving at the amount owed it, for this is what is provided in the note and mortgage. The joint stipulation, JX 1,

shows that the total contract billings, consisting of the primary contract amount and change orders, totaled $231,291.09. It is further stipulated in JX 1 that payments in the amount of $130,591.64 were made. There was a balance owing as of February 15, 1984 in the amount of $100,699.45. It is this last figure which was used by claimant in making its compounding computation to arrive at a balance due of $169,282.18.

It is stipulated by the parties that claimant has never been registered (qualified) to do business as a foreign corporation within the state of South Carolina.

■ 1. *Is Claimant a Secured Creditor?* Claimant says that it is a secured creditor by reason of the note and mortgage which it took dated February 15, 1984. The position of objectors regarding the claim is that claimant should not be treated as a secured creditor because, under South Carolina law, it cannot enforce the mortgage since it did not qualify to do business in South Carolina. We state at the outset that it is not entirely clear to us that inability of claimant to enforce its mortgage in the state courts of South Carolina should be the determinant in this bankruptcy case of whether claimant should be regarded as a secured creditor. The parties, however, have not approached the question from this point of view, but rather assume in their arguments that claimant should be treated as unsecured if the mortgage is unenforceable under the laws of South Carolina. We therefore will discuss and decide the issue of secured versus unsecured status of claimant in the terms chosen by the litigants.

The pertinent South Carolina statute is the following:

33–23–140

(A) A foreign corporation which does business in this State without authority is liable to this State for all fees, penalties, and franchise taxes for the years or parts thereof during which it did business in this State without authority. In addition, such corporation is liable to a fine of ten dollars per day for each day it fails to pay such fees, penalties, and franchise taxes. The Attorney General shall bring proceedings to recover all such amounts due under the provisions of this section.

(B) A foreign corporation doing business in this State without authority, when such authority is required by this title, shall not maintain any action, suit, or proceeding in this State unless and until such corporation shall have been authorized to do business in this State and shall have paid to the State all fees, penalties, and franchise taxes due under subsection (A).

(1) This prohibition applies to:

(a) Any successor in interest of such foreign corporation, except any receiver, trustee in bankruptcy, or other representative of or creditors of such corporation;

(b) Any assignee of the foreign corporation, except an assignee for value who accepts an assignment without knowledge that the foreign corporation should have but has not obtained authority to do business in this State;

(c) The failure of a foreign corporation to obtain authority to do business in this State shall not impair the validity of any contract or act of such corporation or the right of any other party to the contract to maintain an action or other proceeding thereon, and shall not prevent such corporation from defending any action suit, or proceeding in this State.

It is not disputed that in order for claimant to be free of the application of this statute, it must have had authority as a foreign corporation to do business in South Carolina. It is also undisputed that it did not have such authority.

Upon a review of the facts and authorities presented by the parties, we must reject the attack by objectors upon plaintiff's status as a secured creditor. The very heart of that attack is that the above-quoted statute bars claimant from bringing an action to foreclose its mortgage in South Carolina. That is not the law. Claimant calls to our attention *Cost of Wisconsin, Inc., v. Shaw, et al.*, 292 S.C. 435, 357 S.E.2d 20 (1987), which holds that a foreign

corporation not previously qualifying to do business in South Carolina could maintain a foreclosure action. It is true that the South Carolina Supreme Court said that such a plaintiff would have to qualify to do business prior to judgment. It is further true that such a plaintiff is subject to fines according to the statute. Neither of these consequences, however, establishes the point vital to objectors' attack, that claimant would be absolutely barred from enforcing its mortgage in the state courts of South Carolina.

2. *Invalidity of Mortgage.* Charleston Medical, Ltd., was an Ohio limited partnership for which a Certificate of Limited Partnership was filed December 26, 1984. The general partner of the limited partnership was Delta Corporation, while the limited partners were individual investors. Claimant was granted a mortgage dated February 15, 1984, such mortgage being recorded March 19, 1984. Debtor's Certificate of Limited Partnership was not recorded until December 11, 1984. Objectors say, therefore, that no valid mortgage with claimant, the mortgagee, came into existence because at that time the legal entity constituting the mortgagor did not exist. Objectors say that Delta Corporation, signatory to the mortgage, was then acting for itself, not for the limited partnership.

The parties have stipulated that the real property upon which the project with which we are here concerned was built was acquired by grantee, Charleston Medical Center, Ltd., by deed dated February 4, 1983, the same entity which filed the present bankruptcy case. No suggestion is made that as of the date of filing of the present Chapter 11 case, this real estate did not become part of the present bankruptcy estate. Indisputably, whatever interest the debtor had in the real estate prior to the filing date, entered the bankruptcy estate upon the filing, for the debtor-in-possession by virtue of 11 U.S.C. § 323, succeeds to the interests of the debtor. See, 2 Collier on Bankruptcy (15th Ed.), ¶ 323.01 at p. 323-2. No question is raised on this record that as of the date of the filing of the bankruptcy case, the limited partnership which filed the case was duly organized and constituted. No one raises a question about the legitimacy of the title to the subject real estate by the filing party as of the date of filing.

Against the foregoing, it is pertinent to ask the question whether prior to the filing of the bankruptcy case, the debtor could successfully defend against the mortgage claim of claimant by asserting that the mechanism by which it took title to the real estate was defective. We have no doubt that an estoppel would arise against such an assertion. The debtor-in-possession, as representative of the bankruptcy estate, into which the debtor's property interests entered upon the filing of the bankruptcy case, is in no different position in this respect than is the pre-filing debtor. Defenses available to a mortgagee against a pre-filing debtor are equally available against a debtor-in-possession. We hold, therefore, that objectors are estopped from asserting that the mortgage is invalid by reason of any organizational deficiency in the debtor at the time that the mortgage transaction was entered into. The analogy suggested by claimant to that which applies in corporation law, that a corporation is estopped from denying its status as a corporation to individuals with whom it has dealt, is well taken. We extend to the present situation the formulation regarding such a principle to be found at 11 O.Jur.3d, Business Relationships, § 50.

3. *Interest.* Having disposed of objectors' contentions with respect to validity of the mortgage, we must deal finally with the rate of interest to which the mortgagee is entitled by reason of nonpayment. Claimant asserts a right to interest compounded monthly. Objectors assert that this method is incorrect, but only simple interest is allowable.

One looks to the contract, if there is one, to determine the parties' rights with respect to interest in an interest-bearing obligation. 61 O.Jur.3d, Interest and Usury § 11. In the present case, the note includes the following language:

This Note, until paid in full, shall bear interest at the prime rate of interest plus one percent (1%) as determined by major Cincinnati, Ohio banks. Interest shall be computed and shall be payable on a monthly basis.

It is to this contract language that claimant looks to establish its entitlement to interest compounded monthly.

We cannot agree that the language establishes such entitlement. True it provides for monthly computation, and true it provides that the interest so computed is payable monthly. The contract language, however, is merely saying that the obligee is entitled to have interest paid monthly, rather than, say quarterly, or annually. It establishes only an intention as to the periodicity of payment of interest, not as to the manner of computation. In order to be entitled to compound interest, the parties must expressly agree to it, 61 O.Jur.3d, Interest and Usury § 29, and the parties have not done so here. We conclude, therefore, that claimant has failed to establish its right to compound interest.

Objectors concede that claimant is, under the note, entitled to interest, and the parties have agreed that the figure for principal and interest, if compound interest is not allowed, shall be $154,145.60. We therefore hold that the claim of claimant be allowed in that amount. Objectors have urged that the amount of the claim be reduced by $21,760.00 (the amount of penalty South Carolina would assess against claimant if it now seeks qualification there). We reject this contention without discussion as lacking any perceptible merit.

So Ordered.